IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| R/C THEATRE MANAGEMENT CORPORATION | ) | |
| 231 W. CHERRY HILL COURT | ) | |
| PO BOX 1056 | ) | |
| REISTERSTOWN, MD 21136 | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | |
| METRO MOVIES LLC | ) | |
| 74 WEST PARK PLACE | ) | |
| STAMFORD, CONNECTICUT 06901 | ) | |
| | ) | |
| SERVE ON: | ) | |
|  MCR&P SERVICE CORPORATION | ) | |
|  CITYPLACE I | ) | |
|  185 ASYLUM ST. | ) | |
|  HARTFORD, CONNECTICUT 06103 | ) | |
| | ) | |
| *Defendant* | ) | |
| | ) | |
| | ) | |

## COMPLAINT AND JURY TRIAL DEMAND

R/C Theatre Management Corporation, Plaintiff, by its undersigned counsel, sues Metro Movies LLC, Defendant, and for cause, states:

### The Parties

1.      Plaintiff R/C Theatre Management Corporation ("R/C Theatre") is a corporation organized under the laws of the State of Maryland with its principal place of business located in Reisterstown, Maryland.

2.      Defendant Metro Movies LLC ("Metro Movies") is a limited liability company organized under the laws of the State of Connecticut, with its principal place of business located in Middletown, Connecticut.

## Jurisdiction and Venue

3.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(1), as Plaintiff is a citizen of the State of Maryland and both defendant is a citizen of the State of Connecticut and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      This Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this cause of action arises, in part, under the laws of the United States.

5.      This Court also has original jurisdiction over this matter pursuant to 28 U.S.C. § 1338 as it arises under an act of Congress relating to trademarks.

6.      Venue is proper in the District of Maryland pursuant to 28 U.S.C. § 1391 (a) as a substantial part of the events giving rise to the claim arose in the District of Maryland and a substantial part of the property that is the subject of this litigation is located within the District of Maryland.

## Facts Common to all Counts

7.      R/C Theatre is in the business of, and for more than 75 years has been in the business of providing management services to the owners of movie theaters. Metro Movies owns and operates a movie theater facility containing twelve screens located at 140 Main Street, Middletown, Connecticut.

8.      On June 12, 2012, the parties entered into a Management Agreement pursuant to which R/C Theatre agreed to use commercially reasonable efforts to supervise and direct day-to-day operations of the theater, subject to the review and approval Metro Cinema, for a term of five years, commencing on July 1, 2012.

9.      In addition to its operational responsibilities, R/C Theatre was required under the agreement to perform all accounting services, employ (at the expense of Metro Cinema) all personnel, maintain all permits and licenses, collect and remit all sales taxes, make and/or supervise all non-structural repairs, alterations and decorations, enter into service contracts with outside vendors, maintain bank accounts and generally operate the theater in a first-class manner.

10.     In exchange for R/C Theatre's management services, Metro Cinema agreed to pay R/C Theatre a management fee equal to 6% of the gross receipts of the theater.

11.     Although the Management Agreement specified a five-year term, Metro Cinema was permitted to terminate the agreement with or without cause upon at least 180 days prior to the effective date of termination.

12.     As agreed, R/C Theatre began to operate the theater for Metro Cinema on July 1, 2012. R/C Theatre incurred substantial startup and other expense to assure that the theater would be operated in a first class, professional and profitable manner, for which no additional consideration was provided.

13.     The purpose of requiring at least 180 days prior written notice prior to termination was, among other things, to allow R/C Theatre to operate and receive percentage revenue to offset the startup costs incurred.

14.     On January 28, 2013 Metro Cinema, in violation of the termination provisions of the Management Agreement, purported to exercise its termination rights by giving R/C Theatre 90 days' notice of the proposed termination.

15.     On January 31, 2013, Metro Cinema unilaterally and wrongfully terminated the Management Agreement, but despite this termination, continued to use R/C Theatre's registered trademark on print advertisements, web sites, ticket stock and in other materials distributed to the public and on its displays in the theater.

16.     On January 31, 2013 R/C Theatre responded to the 90-day termination letter, advising Metro Cinema that the proper notice period was 180, not 90 days, but offering to terminate earlier if the estimated management fee for the full 180-day notice period was paid in advance.

17.     Shortly after receiving R/C Theatre's January 31, 2013 response, in an undated letter, Metro Cinema wrote back citing seven purported "defaults" under the agreement and giving R/C Theatre ten days to cure. None of the alleged "defaults" violated either the letter of the Management Agreement or the obligation of R/C Theatre to operate the theater in a commercially reasonable manner. Nor was the 10-day notice consistent with the provisions of the Management Agreement which provided for a thirty-day notice period for the cure of non-monetary defaults.

18.     As a result of the actions of Metro Cinema, R/C Theatre was required to retain counsel to address the breaches of the Management Agreement committed by Metro Cinema. On February 1, 2013 counsel wrote to Metro Cinema advising it that, among other things, there were no defaults and the attempts to declare such defaults were not proper.

19.     Despite its wrongful termination of the Management Agreement, Defendant Metro Cinema continued to use R/C Theatre's registered trademarks in print advertising, on web sites such as Fandago and other internet based services and ticket stock and in other materials distributed to the public and on its displays in the theater.

20.     In addition, Defendant Metro Cinema continued to incur obligations in R/C Theatre's name, including but not limited to credit card processing fees and prepaid theater tickets.

21.     At no time was Defendant Metro Cinema authorized to use R/C Theatre's registered trademarks and/or logo.  Nor was it ever authorized to incur charges, obligations or liabilities in R/C Theatre's name.

<u>COUNT 1 – BREACH OF MANAGEMENT AGREEMENT</u>

22.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 21 above as if more fully set out herein.

23.     By its attempted termination of the Management Agreement without the requisite 180 day prior written notice, Defendant Metro Cinema has caused Plaintiff to lose substantial revenues and to incur additional costs and damages.

<u>COUNT 2 – TRADEMARK INFRINGEMENT</u>

24.     Plaintiff repeats and realleges the allegations of Paragraphs 1 through 21 above as if more fully set out herein.

25.     R/C Theatre is the owner of the service mark R/C Theatres, which mark is registered in the Principal Register of the United States Patent and Trademark Office,

Registration No. 2,740,278.  A copy of the Certificate of Registration is attached hereto as "Exhibit A."

26.      Beginning on the effective date of the Management Agreement, Plaintiff R/C Theatre, with the permission and consent of Defendant Metro Cinema, marketed the theater as R/C Theatre Metro Movies 12 on the internet, in print advertising, on paper goods (including ticket stubs) and other forms of use.

27.      After Defendant Metro Cinema unilaterally and wrongfully terminated the Management Agreement, it took over the operations of the theater, but continued to advertise its goods and services in violation of Plaintiff R/C Theatre's right to the sole and exclusive use of the service mark R/C Theatres.

28.      As soon as Plaintiff R/C Theatre became aware of the wrongful use of its mark, Plaintiff notified Defendant Metro Cinema of it wrongful use of the registered mark and repeatedly demanded that Defendant immediately discontinue its use.

29.      Defendant's misuse of the R/C Theatre trademark was calculated to deceive purchasers and consumers as to the source of the goods and services provided.

30.      By the acts complained of above, Defendant, without the consent of R/C Theatre, has used, and is continuing to use, in commerce, reproductions, counterfeits, copies and colorable imitations of Plaintiff's registered trademark in connection with the sale, offering for sale, distribution and advertising of goods and services in such a manner as are likely to cause confusion and mistake, and to deceive, all in violation of the provisions of 15 S.S.C. §1114(1)(a) and (b).

31.     Defendant has committed, and is currently committing the acts complained of above with actual knowledge of Plaintiff R/C Theatre's rights and with knowledge and intent that such acts would likely cause confusion, mistake, and deception.  Defendant has infringed, and is continuing to infringe, willfully, Plaintiff's registered trademark, thereby causing immediate and irreparable injury to Plaintiff, for which there is no adequate remedy at law.

### COUNT 2 – FALSE DESIGNATION OF ORIGIN

32.     R/C Theatre repeats and realleges the allegations of Paragraphs 1 through 31 above.

33.     By reason of the acts of Defendant Metro Cinema referred to above, Defendant has falsely designated the origin of, and has falsely described or represented its products and services to have originated with Plaintiff by affixing Plaintiff's logo and registered trademark to it offerings of products and services in interstate commerce in violation of 15 U.S.C. § 1125(a).

### COUNT 3 – UNFAIR COMPETITION

34.     R/C Theatre repeats and realleges the allegations of Paragraphs 1 through 34 above.

35.     Defendant's above-described acts are unlawful at common law and violative of § 1-414 of Maryland's Business Regulation Code and of § 42-110(b) of the Connecticut General Statutes Annotated.

WHEREFORE, Plaintiff respectfully requests the following relief:

A.     That the Count enter judgment in favor of Plaintiff against Defendant in the amount of $350,000 as a result of its breach of the Management Agreement;

B.    That the Court find that Defendant has infringed Plaintiff's Registered Trademark No. 2,740,278 all in violation of 15 U.S.C §1114(1);

C.    That the Court find that Defendant has falsely designated the origin of its products and services, has induced others to designate, falsely the origin of such products, and has made and used false representations in connection with the sale, offering for sale, promotion, and advertising of such produces, all in violation of 15 U.S.C § 1125(a);

D.    That the Court find that Defendant has unfairly competed with Plaintiff by infringing upon its common law rights and in violation of  § 1-414 of Maryland's Business Regulation Code and of § 42-110(b) of the Connecticut General Statutes Annotated;

E.    That the Court preliminarily and permanently enjoin Defendant, its agents, servants, employees, and all persons in active concert or participation with Defendant from using, displaying, or selling, without the authorization of Plaintiff, and any counterfeit or colorable imitation or facsimile of the trademark registered and owned by Plaintiff;

F.    That the Court order Defendant to account to Plaintiff for all profits derived by Defendant as a result of Defendant's wrongful use of Plaintiff's trademark, and on such accounting, to pay to Plaintiff all such profits;

G.    That the Court order Defendant to deliver to Plaintiff all reproductions, counterfeits, facsimiles or colorable imitations of Plaintiff's trademark;

H.    That the Court order Defendant to pay Plaintiff compensatory damages, treble damages and/or statutory damages in accordance with 15 U.S.C § 1117;

I.    That the Court award Plaintiff its costs, including reasonable statutory and contractual attorneys' fees incurred in these proceedings; and

J.      That the Court award Plaintiff such other and further relief as its cause may

require.


                                FEDDER & JANOFSKY LLC


                                _____/s/_____
                                By: Steven K. Fedder
                                Federal Bar No. 00873
                                2650 Quarry Lake Drive – Suite 100
                                Baltimore, Maryland 21209

                                sfedder@mdcounsel.com

                                *Attorneys for Plaintiff R/C Theatre
                                Management Corporation*


Plaintiff requests that this matter be heard before a jury.